EXHIBIT "A"

**STATE OF SOUTH CAROLINA**

COUNTY OF _Charleston_

_Carlos Lugo_

**Plaintiff(s)**

vs.

_The Boeing Company_

**Defendant(s)**

Submitted By: _Peter Kaufman, Esq._
Address: _295 Seven Farms Dr, C-267_
_Charleston, SC 29492_

**IN THE COURT OF COMMON PLEAS**

**CIVIL ACTION COVERSHEET**

_2019_ -CP - _10_ - _4838_

SC Bar #: _100144_
Telephone #: _843 900 7134_
Fax #:
Other:
E-mail: _PKaufmanlaw@gmeil.com_

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint. **This form is NOT required to be filed in E-Filed Cases.**

**DOCKETING INFORMATION** *(Check all that apply)*
*If Action is Judgment/Settlement do not complete*

☑ **JURY TRIAL** demanded in complaint.          ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

**NATURE OF ACTION** *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☐ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☐ Breach of Contract (140) | Previous Notice of Intent Case # | ☐ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☐ Fraud/Bad Faith (150) | 20___-NI-___-___ | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ Warranty (160) | ☐ Notice/ File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
| ☑ Employment Discrim (170) | ☐ Other (299) | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☑ Employment (180) | | ☐ Slander/Libel (380) | ☐ Other (499) |
| ☐ Other (199) | | ☐ Other (399) | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | ☐ Confession of Judgment (770) | ☐ Public Service Comm. (990) |
| | | ☐ Petition for Workers Compensation Settlement Approval (780) | ☐ Employment Security Comm (991) |

| Special/Complex /Other | | | |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Incapacitated Adult Settlement (790) | ☐ Other (999) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | ☐ Other (799) | |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | | |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | | |
| ☐ Sexual Predator (510) | ☐ Pre-Suit Discovery (670) | | |
| ☐ Permanent Restraining Order (680) | | | |
| ☐ Interpleader (690) | | | |

**Submitting Party Signature:** _[signature]_          **Date:** _9/20/19_

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

SCCA / 234 (02/2018)                                                      Page 1 of 2

**Effective January 1, 2016,** Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**Pursuant to the ADR Rules, you are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**    **You must comply with the Supreme Court Rules regarding ADR.**
**Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA    )    IN THE COURT OF COMMON PLEAS
                           )
COUNTY OF CHARLESTON       )    C.A. No: *2019·CP10·4838*
                           )
CARLOS LUGO,               )
                           )
      Plaintiff,           )
                           )
    vs.                    )            SUMMONS
                           )    (JURY TRIAL REQUESTED)
THE BOEING COMPANY,        )
                           )
                           )
      Defendant.           )
_____)

     YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action a copy of which is hereby served upon you, and to serve a copy of your Answer to the Complaint on the subscriber at his office at 4000 Faber Place Drive, Suite 300, North Charleston, SC 29405 within thirty (30) days after the service thereof, exclusive of the day of service. If you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint and judgment by default will be rendered against you.

1

Respectfully Submitted,

P.P. _____

Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300, N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com


_____

Peter Kaufman
Kaufman Labor & Employment Solutions, LLC
Federal Bar # 11302
SC Bar #100144
295 Seven Farms Dr. Ste C-267
Charleston, SC 29492
(843)513-6062
pkaufmanlaw@gmail.com

September
August 22 2019

2

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
                        )
COUNTY OF CHARLESTON   ) C.A. No: 2019-CP-10-4838
                        )
CARLOS LUGO,           )
                        )
      Plaintiff,        )
                        )
vs.                     )        COMPLAINT
                        )  (JURY TRIAL REQUESTED)
THE BOEING COMPANY,    )
                        )
                        )
      Defendant.       )
_____ )

      The Plaintiff, Carlos Lugo, by and through his undersigned attorneys Bonnie Travaglio Hunt of Hunt Law LLC and Peter M. Kaufman of Kaufman Labor Employment Solutions, LLC, does hereby make the following claims and allegations against the Defendant, The Boeing Company:

## PARTIES AND JURISDICTION

1.    The Plaintiff is a resident of Charleston County, South Carolina.

2.    The Defendant, The Boeing Company (hereinafter referred to as Defendant) is a foreign corporation, which does business in, contracts in, and derives benefit from the laws of the State of South Carolina.

3.    All parties and events herein mentioned are within the jurisdiction of this Honorable Court.

4.    This Court has jurisdiction over the parties and subject matter and venue is proper.

## FACTS

3

5.    The Plaintiff has significant experience in the aircraft industry. The Plaintiff began his career with the Aviation Industry in October 15, 1980 with Delta Airlines.

6.    The Plaintiff first worked for the Boeing facility in North Charleston as a contractor in December 2009.

7.    That the Plaintiff was hired as an employee at Boeing on July 16, 2010.

8.    The Plaintiff worked at the Boeing facility in North Charleston as an FRTI until November 29, 2018.

9.    The Plaintiff's director supervisor was Dimascio.

10.    That the Plaintiff worked the 2:30 pm to 11:00 pm shift. The Plaintiff typically worked Monday through Friday plus overtime to include weekends. The Plaintiff would come in an hour early due to being a lead on the shift in order to familiarize himself with what had occurred during the other shifts.

11.    That the Plaintiff was assigned to Stall A1 and A2.

12.    That the Plaintiff was considered an exemplary employee during his employment at Boeing. The Plaintiff did not receive discipline while employed with the Defendant up and until his termination. The Plaintiff's job performance included an accomplishment award on June 30, 2018. The Plaintiff received a Commitment to Quality Award In recognition of his significant contributions to the Delivery Center and Flight Line Operations.  Stating that his actions went above and beyond expectations with support of production and Repair Station activities.

13.    As an employee, the Plaintiff was very familiar with all policies and procedures of the Defendant, Boeing including but not limited to all policies and procedures regarding safety requirements from the FAA. Included in Boeing's policies was

4

"Field Operations Foreign Object Debris and Damage Prevention", the purpose of the policy was "This business process guide (BPG) describes a method used for the gathering of facts and data that are to be used to improve foreign object elimination."

14.    During the Plaintiff's employment about five years before the Plaintiff's termination there was an election to vote in a union.  The Plaintiff was not involved in the vote. The Plaintiff attended multiple Company meetings and had discussions where managers and supervisors encouraged the Plaintiff and other employees to vote no to the union.  During the first campaign the Plaintiff did not wear union gear.

15.    In January 2018, the Plaintiff was informed that there was going to be another union vote.

16.    During a meeting in the beginning of 2018, the Plaintiff was present with second shift FRTIs where Pentz, an African American Labor Representative from Boeing and Lawyers for Boeing spoke and encourage the employees to vote no to the union. The meeting took place in the Delivery Center Conference Room.  The Plaintiff participated in the meeting by raising his hand, asking questions and making several statements.  The Plaintiff specifically stated "I need to know.  Let's say if tomorrow this union doesn't go through.  What do you have for us? Do you have a solution right away?  It seems to me nobody knows in what direction we need to go hear.  A union is just another person that's going to be a witness over any labor situation. Why should I have a union rep when you guys have the book.  You guys have everything to make this work smooth and don't apply what needs to be done for us to have communication in our labor relationship and you don't use it.  Because you

don't do that, the workers want to have somebody to help them because you guys are not using it." The Labor rep and lawyer had no response to the Plaintiff.

17. The Plaintiff than motioned to all the employees in the room and stated, "See all these people, they are very smart people. Whatever is going to become the decision is because the people are smart." I informed the representatives that he was in this group and did not want Boeing to underestimate them. The company representatives did not respond.

18. After the meeting the Plaintiff approached Pentz and discussed the issues within management and the failure of management to handle the problems properly.

19. Prior to the Second vote on bringing in the union the Plaintiff participated in a second Company meeting about the Union. The FRTIs and FRTS from second shift were present in the Delivery Center. The CEO and high-level executives from Seattle spoke during the meeting. The Boeing Executive lead the meeting and was accompanied by his attorney. The Plaintiff against asked the same questions and made the same statements as in the first meeting. The Executive did not respond. Other employees also asked questions and informed the executive that the Company had failed its organizational structures.

20. The Plaintiff was a union supporter but did not wear union gear.

21. As part of the Plaintiff's position as an FRTI the Plaintiff was required that when a plane comes into a Stall after a flight, the Plaintiff, the flight crew (pilots and officers) do a walk around and visually inspect the plane from nose to tail, primarily to look for bird strikes and any other damage to the fuselage of the airplane including loose fasteners, panels flying off from airplane, leaks from components, tire damage

6

including how much thread the tires have.  The flight crew is required to make a report about the condition of the plane after each inspection.  Once the flight crew releases the airplane, they release it to the stall supervisors for the stall supervisors to do their inspection.

22.    In August of 2018 the performance of Bird Strike Inspections shifted from FRTIs to FRTs.  The Plaintiff was aware of this because the bird strike inspection on the task callboard would be assigned to FRTs not the FRTIs.

23.    On October 30, 2018, the Plaintiff performance an inspection in the evening on the Dash 10 Aircraft 731 that had come from Dallas.  While working the Plaintiff accepted a task to inspect the left engine.  The screen indicated that FRT Mester had completed the task and the Plaintiff was up to inspect.  The Plaintiff went out and observed that the plane already had its engine cowling open.  The Plaintiff used his flashlight and followed the instructions or job details for the job inspection.  The Plaintiff looked at the nose cowl inlet, the leading edge and trial edge of the fan blades, the interior area of he engine to the fan exit and the exhaust area as is required.  The Plaintiff competed the inspection in 45 minutes.  The Plaintiff completed the inspection alone and did not find any issues and signed off on the job on the computer indicating the area was clear of foreign debris and okay for flight.  The Plaintiff saw no feather or other debris that would indicate a bird strike.  The Plaintiff than went on to his next task.  The day before the inspection Boeing had removed all flashlights from the line.  The Plaintiff's lead had even joked tat Boeing had removed the best flashlights.

7

24.   The performance of these inspections is a regular duty of the Plaintiff. The Plaintiff had performed Bird strike inspections while employed with Delta Airlines and was very familiar with the evidence of bird strikes. The call board has a specific task called bird strike inspection that will be assigned to an employee. A bird strike inspection requires a visual inspection of the plane.

25.   On Monday November 5, 2018, the Plaintiff called in sick to work. The Plaintiff had worked in Dallas Texas from October 17 to October 26, doing paint support on a Boeing 731 plane.

26.   On Tuesday November 6, 2018, the Plaintiff came to work and was working in Stall A1/A2 when he was approached by Dimascio. Dimascio instructed the Plaintiff to put away his computer and follow him to the delivery center. Dimascio informed the Plaintiff there was going to be a meeting in the conference room. No one else was present during this instruction from Dimascio.

27.   The Plaintiff put away his computer and followed Dimascio to the Deliver Center. While walking the Plaintiff asked Dimascio what was going on. Dimascio informed the Plaintiff that there was supposed to be an investigation of a bird strike on Airplane 731. The Plaintiff response was to ask Dimascio what he was talking about. The Plaintiff informed Dimascio that he did not know anything about the alleged bird strike. Dimascio and the Plaintiff arrived at the Delivery Center and went to the 3rd Floor conference room.

28.   Present in the Conference room were the Plaintiff, Dimascio and an HR Representative.

8

29. The HR Representative informed the Plaintiff that he was being suspended from work due to an open investigation into a bird strike. The Plaintiff again informed the HR representative that he had no knowledge regarding the incident. The HR representative proceeded to inform the Plaintiff that he was suspended with pay until further notice. The Plaintiff again asked why he was not questioned or informed and had not received a warning regarding the incident. The HR Representative and Dimascio ignored the Plaintiff's questions. The HR Representative requested the Plaintiff's ID. Dimascio asked for the Plaintiff's stamp. Security was called and the Plaintiff was escorted to his car. Security took pictures of his license plate prior to the Plaintiff leaving the premises.

30. After leaving the premises, the Plaintiff received a phone call from Richard Mester an FRT who worked with the Plaintiff. Mester asked the Plaintiff if he had received any information regarding the investigation. The Plaintiff informed Mester that he had not been given any information. Mester than informed the Plaintiff that Mester and Joe had also been suspended. Joe Demarco was the second shift Lead FRT in Stall A1. The Plaintiff and Mester discussed the alleged bird strike that Boeing could be referring too. The Plaintiff asked Mester if Boeing had lab results with specimens. Mester informed the plaintiff that he had no knowledge. The Plaintiff further asked Mester if there were any repairs commiserate with a bird strike. Mester informed the Plaintiff that he was not aware of any. The Plaintiff and Mester talked about how the investigation should resolve in their favor since there was no evidence.

31. On November 5, 2018 the Plaintiff sent a text message to Dimascio and asked him for an update retarding the Plaintiff's situation and how he would receive pay. The

9

Plaintiff also called Dimascio and requested an update. Dimascio informed the Plaintiff that he did not have an answer. The Plaintiff attempted to call Dimascio several times prior to his termination for updates on his status. Dimascio refused to answer the Plaintiff's phone calls.

32.    On November 12, 2018 the Plaintiff sent Dimascio another text message stating that he had not received an answer to his other text message of November 5 and needed to know his status. The Plaintiff texted Dimascio again on November 15, 20 and 28 requesting a status update with no response.

33.    Around November 13, 2018 the Plaintiff received a call from a Boeing investigator named Mary Wyatt. Wyatt introduced herself to the Plaintiff and informed the Plaintiff that she was in charge of the alleged bird strike investigation and she needed to have details. Wyatt asked the Plaintiff if he knew that he was being investigated over bird strike on Airplane 731. The Plaintiff stated that he knew that he had been suspended. Wyatt informed the Plaintiff that he was accused of missing the bird strike and not reporting it. Wyatt asked how that had happened. The Plaintiff clearly informed Wyatt there was no bird strike. The Plaintiff further informed Wyatt that he understood that he had a final buyout of FOD but had never seen a bird strike. The Plaintiff than informed Wyatt that if Boeing was bringing this up now that she should request all laboratory results of a bird strike. Wyatt ignored the Plaintiff's suggestions and proceeded to ask the Plaintiff again what his inspection was. The Plaintiff informed Wyatt of the inspection steps and process. Wyatt asked the Plaintiff if the light and ambience were good enough to do an inspection. The Plaintiff informed Wyatt again that there was no evidence of bird strike when he

completed his inspection. The Plaintiff and Wyatt discussed the process of inspections. The Plaintiff further informed Wyatt that prior to his inspection the manager and flight crew had reviewed the plane with no mention of an alleged bird strike. The Plaintiff than informed Wyatt it was an FAA rule. The Plaintiff further informed Wyatt that the flight crew and managers were required by the FAA to inspect the plane prior to its release to the FRTs and FRTIs. Wyatt informed the plaintiff that the investigation would go to a board and the results would be sent to South Carolina.

34.    On Wednesday November 21, 2018 the Plaintiff saw his Level II Manager Ron Pentz at Costco in Mt. Pleasant. The Plaintiff approached him and started a conversation. Pentz informed the Plaintiff that he did not know about the alleged bird strike, investigation into alleged bird strike and the plaintiff's status.

35.    On November 29, 2018, the Plaintiff received a call from Pentz with Human Resources. Pentz informed the Plaintiff that he was terminated for negligence in the performance of his duties. HR informed the Plaintiff that he would receive his last paycheck. The Plaintiff was further informed that he would receive a letter from Boeing. The Plaintiff received no letter from Boeing.

36.    Prior to the Plaintiff's termination he had not received any discipline regarding any performance. The Plaintiff was never counseled by a Supervisor or Management that he had failed to perform an inspection properly. During the Plaintiff's employment since 2010 the Plaintiff is unaware of any employee being disciplined or terminated for failing to perform any inspection.

11

37. That during the Plaintiff's employment the Plaintiff was aware of safety issues on several airplanes including a particular one that was for deliver in China. The Safety pins were left in the landing gear. The Flight Crew could not retract the landing gear and was required to dump all their fuel and return. The manager was terminated for the event but none of the FRTs would were required to remove the pins were terminated. On another occasion no employees were terminated when they failed to inspect a wing properly and a dent was found, and the part had to be replaced.

38. During the Plaintiff's employment he has found several sanding disks left in flight control spoiler areas that could have affected the airplanes flight. No employees were disciplined for failing to do an inspection for FOD. Whenever these things happen the FRTI creates a record in the computer system that states that FOD was removed.

39. That the Defendant terminated the Plaintiff for his safety complaints regarding lighting, failure for more stringent walk throughs, tool accountability, and his involvement in the union.

40. That as a direct and proximate result of the Defendant's intentional and unlawful action of wrongfully terminating the Plaintiff, the Plaintiff has suffered lost wages, emotional damages, compensatory and consequential damages.

41. That the Plaintiff is entitled to an award of actual damages, compensatory, consequential, and punitive damages against the Defendant for his unlawful suspension and termination.

42. That the Defendant retaliated against the Plaintiff for reporting the violation of safe working conditions.

12

43. That the Defendant willfully and wrongfully terminated the Plaintiff for reporting the safety concerns.

44. That the Plaintiff was terminated from his employment for his support of the union. That the Plaintiff has the right as an employee to support the union.

45. That the Defendant terminated the Plaintiff in violation of a clear mandate of public policy and in violation of South Carolina Law. The Defendant terminated the Plaintiff for his concerns regarding safety to include but not limited to lighting, FOD, Tool Accountability and Flight of planes without proper search for lost tools.

46. That as a direct and proximate cause of the Defendant's wrongful termination of the Plaintiff, the Plaintiff:

    a. Suffered the loss of his job;

    b. Suffered the loss of benefits associated with his job;

    c. Suffered future lost wages and benefits;

    d. Suffered consequential and compensatory damages;

    e. Suffered emotional damages;

    f. Incurred attorney's fees and costs as a result of having to bring this action.

47. That the Plaintiff is entitled to an award of damages against the Defendant for actual damages, consequential damages, punitive damages, attorney's fees, costs of this action and other damages, such as this Honorable Court deems appropriate and just.

### FOR FIRST CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF

### PUBLIC POLICY AGAINST BOEING

48. Paragraphs one (1) through forty-seven (47) are hereby incorporated verbatim.

13

49. That the Defendant wrongfully terminated the Plaintiff in violation of public policy when it terminated him because he reported the safety concerns and he was a supporter of the union.

50. That, as direct and proximate result of the Defendant's unlawful actions, the Plaintiff suffered significant damages to his reputation. The Plaintiff further suffered lost wages, lost benefits, emotional damages, compensatory damages, and consequential damages.

51. That the Plaintiff is entitled to recover an award against the Defendant in the amount of actual, consequential, compensatory and punitive damages.

52. That the Defendant terminated the Plaintiff in violation of a clear mandate of public policy and in violation of South Carolina Law.

53. That as a direct and proximate cause of the Defendant's wrongful termination of the Plaintiff, the Plaintiff:

a. Suffered the loss of his job;

b. Suffered lost wages, the loss of his salary; and future increases thereof;

c. Suffered the loss of benefits associated with his job;

d. Suffered the loss of future benefits associated with his job;

e. Suffered consequential economic damages as a result of the loss of his job;

f. Embarrassment;

g. Severe Emotional Distress

h. Incurred attorney's fees and costs as a result of having to bring this action.

14

54.    That the Plaintiff is entitled to an award of damages against the Defendant for actual damages, consequential damages, punitive damages, attorney's fees, costs of this action and other damages, such as this Honorable Court deems appropriate and just.

## FOR A SECOND CAUSE OF ACTION

## SLANDER

## AGAINST ALL DEFENDANTS

55.    Paragraphs one (1) through fifty-four (54) are hereby incorporated verbatim.

56.    The Defendants published false statements regarding the Plaintiff's work performance and an alleged failure of the Plaintiff reporting a bird strike. The failure to report a bird strike is an FAA violation and against the law. The Defendants contention was to essentially accuse the Plaintiff of a crime.

57.    That the false statements regarding the Plaintiff in order to have an escape goat. The purpose of the termination of the Plaintiff was to strike fear into the hearts of others that had made safety complaints and joined the union.

58.    That the false statements were intentionally made by the Defendants, in order to have the Plaintiff terminated from his employment and damage his reputation in the Airline Industry.

59.    That the Defendant Boeing has continued the publication of the false narrative regarding the Plaintiff in order to damage the reputation of the Plaintiff further by publishing internal and external memorandums regarding the Plaintiff's involvement in the alleged bird strike and the union.

60.    That the Defendants are the direct and proximate cause of significant damage to the Plaintiff.

61.  That the Plaintiff is entitled to damages from the Defendants in the amount of actual, compensatory, consequential and punitive damages for their unlawful procurement of criminal charges harassment by the police against the Plaintiff, their unlawful actions towards him in order to ruin his reputation, their unlawful actions of slandering his name.

## FOR A THIRD CAUSE OF ACTION

## NEGLIGENT SUPERVISION OF AN EMPLOYEE AGAINST

## BOEING

62.  Paragraphs one (1) through sixty-one (61) are hereby incorporated verbatim.

63.  That the Defendant, negligently supervised its employees, Pentz, Loecher, Volmert, Carbon and Helm.

64.  That the Defendant owed the Plaintiff a duty to protect the Plaintiff from the wrongful acts of its employees.

65.  That Boeing was aware that there was no bird strike but allowed its employees to lie about the Plaintiff's involvement.  The only persons terminated or disciplined for the alleged bird strike were union members.  No non-union members were disciplined for the alleged bird strike.

66.  That the Defendant breached the duty it owed to the Plaintiff by not properly supervising its employees.

67.  That the negligent supervision of these employees caused the Plaintiff significant damages.

68.  That Boeing had knowledge of the Defendants actions of making false statements regarding the employees in the union in order to have them terminated from employment. However, Boeing failed and refused to protect its employees in order to have the union driven out of the South Carolina Plant.

69.    That the Defendant is the proximate and direct cause of damages to the Plaintiff.

70.    That the Plaintiff is entitled to an award of damages from the Defendant for their negligent supervision of their employees in the amount of actual, compensatory, and punitive damages.

WHEREFORE, the Plaintiff prays for an award of damages against the Defendant in the amount of:

A.    Actual damages;

B.    Consequential damages;

C.    Compensatory

D.    Punitive damages;

E.    All other damages under South Carolina Law;

F.    Other damages such as this Honorable Court deems appropriate and just.

Respectfully Submitted,

Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300, N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com

Peter Kaufman
Kaufman Labor & Employment Solutions, LLC
SC Bar #100144
295 Seven Farms Dr. Ste C-267
Charleston, SC 29492
(843)513-6062
pkaufmanlaw@gmail.com

September 20, 2019